JOSEPH SEIGFRIED et al., Respondents, v. THE CHICAGO, BURLINGTON and QUINCY RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals. Argued and Submitted March 3, 1910. Opinion Filed March 22, 1910.**

1. **COMMON CARRIERS: Freight: Stoppage in Transit: Sufficiency of Evidence.** In an action against a carrier for damages for delivering goods to the consignee after they had been stopped in transit by the shipper, evidence *held* to sustain a finding that the consignee was insolvent when the order to stop the shipment was given.

2. ——: ——: ——: **Proof of Insolvency.** Strict proof of insolvency is not essential to exercise the right of stoppage *in transitu*; "insolvency" in that sense meaning general inability to pay debts.

3. ——: ——: ——: **Evidence: Similar Transaction.** In an action against a carrier for damages for delivering goods to a consignee, after they had been ordered stopped while in transit by the shipper, the exclusion of evidence tending to show that in previous transactions between the shipper and the consignee the latter had made prompt payment was not erroneous, since it had no tendency to show the shipper had knowledge of the consignee's insolvency when the goods were sold.

4. ——: ——: ——: **Knowledge of Consignee's Insolvency.** The right of stoppage *in transitu* does not exist even though the buyer is insolvent, if that fact was known to the seller at the time the sale was made.

5. ——: ——: ——: **Estoppel to Deny Right.** Where the carrier, on being told by the shipper that he feared the consignee's insolvency, and on request to stop the goods in transit, promised to stop them upon the shipper surrendering the bill of lading with a signed order to stop the goods indorsed thereon, and afterwards told him that the goods had been stopped, it was estopped from thereafter denying the shipper's right to stop the shipment on the ground of want of proof of insolvency, or of knowledge by the shipper thereof when he directed the goods to be stopped, for by these acts and declarations the carrier prevented the shipper from protecting himself in some other way, if the right of stoppage had been denied or the right to exercise it challenged.

6. ——: ——: ——: **Liability for Mis-Delivery: Defenses.** A carrier may show as a defense to an action for damages for delivering goods to the consignee, after they had been ordered stopped in transit by the shipper, that the goods had been delivered to the consignee·before it was notified to stop the shipment and before it had time to communicate with its agent at destination.

7. ——: ——: ——: **Delivery to Carrier: Bill of Lading: Evidence.** A bill of lading issued by a railroad company, returned to it on its demand when the shipper requested the goods to be stopped in transit, was prima facie evidence that the company had received the goods for shipment.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams,* Judge.

AFFIRMED.

*Robert & Robert* and *Wm. L. Becktold* for appellant.

(1) The delivery of goods to a common carrier for transportation to the purchaser passes title to the latter and is equivalent to delivery to the purchaser, subject only to the right of stoppage *in transitu.* Scharff v. Meyer, 133 Mo. 428; Bank v. Smith, 107 Mo. App. 188; Cultivator Co. v. Railroad, 64 Mo. App. 305. (2) "Right of stoppage *in transitu* arises solely upon the insolvency of the buyer." 4 Elliott on Railroads, p. 2390; Hutchinson on Carriers, sec. 421; Heinz v Transfer Co., 82 Mo. 233; Smith Co. v. Railroad, 122 S. W. Rep. 342; Grocer Co. v. Railroad, 122 S. W. 10; Cultivator Co. v. Railroad, 64 Mo. App. 305; Scott Bros. v. Grimes D. G. Co., 48 Mo. App. 521; Estey v. Truxel, 25 Mo. App. 238; Armentrout v. Railroad, 1 Mo. App. 158. (3) Plaintiff's petition is not based on defendant's common law liability. The allegations of the petition as to negligence on the part of the defendant are not supported by proof. It was incumbent on plaintiff to prove the negligence alleged. Hasse v. Transportation Co., 122 S. W. Rep. 362; Clark v. Railroad, 122 S. W. Rep. 318; Milling Co. v. Transit Co., 122 Mo. 258; Whiting v. Railroad, 101 Mo. 631; Hurst v. Railroad, 117 Mo. App. 25; McCrary v. Railroad, 109 Mo. App. 567; Ryer v. Railroad, 54 N. Y. Supp. 583, affirmed, 56 N. Y. Supp. 1083.

*J. Carter Carstens* for respondents.

(1) While the right of stoppage *in transitu* arises only upon the insolvency of the buyer. In order to exercise the right it is not necessary that the buyer should have been adjudicated a bankrupt, or made an assignment for the benefit of his creditors. (a) It is

sufficient if his conduct in business affords the ordinary
evidences of insolvency. Diem v. Koblitz, 49 Ohio St.
41-51, 29 N. E. 1124; C. F. ex parte Carnforth, 4 ch., D.
108-122. An inability to pay avowed either in act or
word. Burdict on Sales (Cases), 617; Durgy Cement,
etc., v. O'Brien, 123 Mass. 13; Lee v. Kilburn, 3 Gray,
(Mass.) 600; Thompson v. Thompson, 4 Cush. (Mass.)
134; Herrick v. Barst, 4 Hill N. Y. 650; Benedict v.
Schaettle, 12 Ohio St. 515; Bloomingdale v. Railroad,
6 Lee (Tenn.) 616; 6 Am. and Eng. Rwy. Cases, 371;
Gibson v. Carruthers, 8 M. and W. 329; Mills v. Ball, 2
B. and P. 457; Bailey v. Schofield, 1 M. and S. 338;
James v. Griffen, 2 M. and W. 622; Parker v. Gassage,
2 C. M. and R. 617; Hayes v. Mouillee, 14 Penn. 48;
Nelson v. Demie, 8 Pick. Mass. 205; Reynolds v. Rail-
road, 43 N. H. 580. (b) Although the buyer has not
actually failed nor had his paper protested, still, if
his conduct in business affords the ordinary evidence of
insolvency, that is sufficient to justify the stoppage of
the goods *in transitu*. Burdict on Sales (2 Ed.), sec.
391, p. 237. (c) Well-founded information of the
embarrassment of the buyer is sufficient to warrant the
seller to stop the goods in transit. Moore v. Lot, 13
Nev. 383; Secomb v. Nutt, 414 B. Mon. (Ky.) 261. (d)
It is the duty of the carrier to act upon the demands
of the vendor (and his assertion that the buyer is in-
solvent) and to yield to the demand. 4 Elliott on Rail-
roads, p. 2390, secs. 15-39; Jeffries v. Railroad (Wis.),
67 N. W. R. 424; 12 Natl. Corp. R. 691; In re Pray,
27 Fed. Rep. 474; The Tigres Browning and L. 38. (2)
Allegations of negligence in petition are mere sur-
plusage. The cause of action was complete when it
stated the demand of stoppage, the agreement of the
carrier to stop, its failure to stop, and the loss of the
purchase price. Besides, the action originated in a
justice court, where no formal pleadings are required.
(3) The objection that the consignee was not insolvent
at the time the stoppage was ordered can only be taken

by the buyer, and not by the carrier, except the carrier may show as a matter of defense that the vendor could have collected his money. Bloomingdale v. Railroad, 6 Lee (Tenn.) 616; 6 Am. and Eng. Ry. Cases, 371; 5 Wait's Action & D., p. 614. (4) It is prudent for the carrier to hold the goods till the validity of claim is established. Bohllingt v. Inglis, 3 East 381; Sneyds v. Hay, 4 J. R. 260; Snee v. Prescat, 1 Atk. 250; Reynolds v. Boston, etc., R. R., 591; Chandler v. Fulton, 10 Texas 2; B. V. Mass., 5 Whar. 189; Rucker v. Donovan, 13 Kas. 251; Newhall v. Vargas, 13 Me. 93; Mottram v. Heyer, 5 Denio 629; Bierce v. Hotel Co., 31 Cal. 160.

STATEMENT.—This action was commenced before a justice of the peace in the city of St. Louis, and from a judgment therein rendered in favor of plaintiffs, defendant appealed to the circuit court, where the trial was had before the court, a jury being waived. The statement on which the case was tried sets out that on the 4th of March, 1907, plaintiffs shipped to one Schlecter, at Rock Island, Illinois, a certain box of merchandise by and through the defendant corporation; that on the 5th of March, plaintiffs notified the defendant to stop said shipment "which the defendant, through its agents and servants, represented it had done immediately upon the notification of the plaintiffs to the defendant," but that the defendant had failed to hold the merchandise and had carelessly and negligently delivered it and permitted it to leave its care and custody and go beyond its control, to plaintiffs' damage in the value of the merchandise ($150.55), for which and costs they prayed judgment. Accompanying the statement was the itemized account. There was no paper pleading by defendant.

At the trial before the circuit court, it appeared that on the 3d of March, 1907, Schlecter had bought the bill of goods of the plaintiffs, the testimony being

that the reasonable value thereof was as set out in the
account filed.   On the 4th of March the goods were
delivered by plaintiffs to the defendant, through the
St. Louis Transfer Company, for transportation to
Schlecter, at Rock Island, they having left the ware-
house of plaintiffs between three and four o'clock of
the afternoon of that date.   About two o'clock on the
afternoon of the fifth of March, the plaintiffs received
a report from the Dun Mercantile Agency as follows:

"Schlecter, M. Clo. Shoes, etc.   Rock Island, Rock
Island Co., Ill.   February 26, 1907.   Store closed
about one week ago and understood to have moved
stock to Peoria, Ill.   2928919079 J. L. R. —;— to N.
Q. 6409—2770—4408—2765—

R. G. Dun & Co.''

Upon receiving this, a member of the firm of plain-
tiffs and hereafter referred to for brevity as plaintiff,
went to the St. Louis Transfer Company's office to
inquire whether the shipment was still in possession
of that company.   Not finding it there, he went directly
to the freight office of the defendant and told the agent
in charge that he would like to have the goods stopped.
The agent asked him for what reason. Plaintiff showed
him the above report from Dun's Agency, and stated
that to his knowledge the man wanted to swindle them
out of the goods.   The agent said, ''All right,'' that he
would stop the goods for them, and asked plaintiff
whether he had the bill of lading, and told him to pro-
duce it to him, saying that it was absolutely necessary
that plaintiffs should give up the original bill of lading
to him, whereupon plaintiff delivered the bill of lading
to the agent of defendant, and at the direction of that
agent, wrote a notation on it to the effect, ''We here-
by ask you to stop these goods,'' signing this in the firm
name.   That was about half past three or four o'clock
of the afternoon of March 5th.   About five o'clock,
wanting to be sure that the goods would be stopped,
this partner went again to the railroad  agent,  who

showed him a duplicate of a telegram to the agent of
the defendant company at Rock Island, Illinois, in
which the agent of the defendant here had requested
the agent of the defendant at Rock Island to stop the
goods sent to Schlecter from plaintiffs.  On that same
day, the 5th, plaintiffs wrote to Schlecter at Rock
Island, Illinois, a letter as follows:

        "St. Louis, Mo., March 5, 1907.
"Mr. M. Schlecter, Rock Island, Ills.

    "Dear Sir:  You no doubt have received our bill
for the goods by this time, but it was reported to us
from the agencies that your store is already closed up
a week and your stock moved to Peoria, Ills., and this
certainly is a puzzle to us, as we cannot understand
when you move your stock to Peoria, why you wish to
have the goods shipped to Rock Island, and under the
circumstances we have no other way but to stop the
goods, as we don't know what is what, and you cannot
blame us for our actions.  Now, Mr. Schlecter, although
the bill is marked net 30 days, as those are jobs, and
same were sold to you almost below cost, yet if you
wish to have those goods, you may send us a St. Louis
or Chicago draft, and take 5 per cent.  The amount is
$150.55 and 5 per cent would be $7.52, and the net
amount would be $143.03, and this is a big inducement.
Please let us hear from you by return mail, as this is
rather important.

          "Yours very truly,
            "Seigfried & Rosenberg."

There was testimony on the part of plaintiffs that
they had never received the goods back and that they
had since learned that the goods had been delivered to
Schlecter and they had never received any money for
them.  On cross-examination, the witnesses testified
that they had sold Schlecter before and that he had
made prompt payments for the goods that had been
sold him.  On objection and motion of plaintiffs this
last answer was stricken out as immaterial, defendant

saving its exception. This was all the evidence in the case. No declarations of law were asked or given. The court found in favor of plaintiffs and entered up judgment in their favor for $158.15 and costs. Defendant in due time filed its motion for a new trial which being overruled, exception was saved and an appeal duly perfected to this court.

REYNOLDS, P. J. (after stating the facts).— The assignments of error may be summarized to be that there was no evidence showing the insolvency of the consignee and that without insolvency there is no right of stoppage in transit, it being also assigned as error that the court had excluded competent and relevant testimony to show that plaintiffs had no knowledge that the consignee was insolvent when they attempted to stop the shipment, and that there was no evidence tending to show that the defendant received for transportation the goods claimed to be lost. None of these assignments are maintainable.

Counsel on each side concede that the right of stoppage in transit must depend, among other facts, on the fact of the insolvency of the consignee. The report from the Dun Agency, the fact that on the very day Schlecter bought the goods, he no longer had his store at Rock Island, but had removed from there to Peoria about a week before; that he made no answer to the letter of March 5th from plaintiffs to him, and that the goods, although delivered, had not been paid for down to the institution of this suit before the justice, which was about April 9, 1908, over thirteen months after they had been bought, are all circumstances from which the court had a right to draw the conclusion that the consignee was insolvent when the order to stop the shipment was given.

Mr. Elliott, in his work on railroads, vol. 4 (2 Ed.), sec. 1539, states the conclusion of the authorities on the right of stoppage in transit, to be that the right

"does not exist, even though the buyer is insolvent, if that fact was known to the seller at the time the sale was made." He refers to the case of Jeffries v. Fitchburg Railroad Co., 93 Wis 250, as instructive authority on this proposition of insolvency. Referring to that case, at page 256, it is stated: "Strict proof of insolvency is not required in order to justify the exercise of the right of stoppage *in transitu*. 'By the word "insolvency" is meant a general inability to pay one's debts; and of this inability the failure to pay one just and admitted debt would probably be sufficient evidence.' [Benj., Sales, sec. 837; Smith, Merc. Law, 550, and note.] It had failed to pay the just and undisputed debts it had owed to the plaintiff and to the defendant for over ten months. Inquiry made at the former place of business of the debtor elicited the information that there was no such concern; . . . and the fact that the witness, . . . connected with it during its corporate existence and having some knowledge of its business, called to show that the right of stoppage had been terminated by delivery to the company or its agent, was not interrogated as to its solvency, is quite suggestive, in view of the facts in evidence, when fairly satisfactory proof of its solvency would have been fatal to the plaintiff's action. The evidence constitutes sufficient prima facie proof of insolvency to sustain the finding. There was no attempt made to dispute this evidence or to rebut it. We must hold that the evidence was sufficient to warrant the finding."

It seems to us that the facts in the case at bar are sufficiently near to those in the Jeffries case to apply the rule there laid down in this case.

We are unable to understand what the assignment, that the court erred in excluding competent and relevant testimony to show that plaintiffs had no knowledge that the consignee was insolvent, refers to. The only evidence that was excluded was that offered by defendant in cross-examination of one of the plaintiffs,

in which defendant undertook to show previous transactions between plaintiffs and Schlecter. If the evidence had tended to show knowledge on the part of plaintiffs of the insolvency when the goods were sold, it would have been relevant, as before stated. But the effort was to show solvency. It was properly excluded. This is all of the evidence on that line that appears from the record to have been offered.

Furthermore the judgment can be sustained on the ground that the defendant is estopped from invoking the law applicable to the right of stoppage in transit which exists as between the consignor and the consignee. When one of the plaintiffs went to the agent of defendant and notified them of his suspicions and fears, those agents not only told him that they would stop the goods but that they had done so, and insisted upon his delivering over to them the bill of lading which he had in his possession, and on plaintiff's endorsing on it over the signature of plaintiffs, the order to stop delivery. In the light of this, defendant is certainly estopped from now denying the right of plaintiffs to stop the shipment, either because there was no proof of insolvency or knowledge on the part of plaintiffs at the time of the fact of insolvency was lacking, for by these acts and declarations of its agents, defendant prevented plaintiffs from protecting themselves in some other way, if the right of stoppage had been denied or the right to exercise it challenged. It was open to defendant to have shown that before notification by the plaintiffs and before communicating with the agent of the defendant at Rock Island, delivery had been made to the consignee. It did not choose to introduce any such evidence, if there was any to that effect, and it stands here without any substantial defense to the plaintiffs' claim.

As to the point made that there was no proof of delivery of the goods to defendant, the bill of lading turned over by plaintiffs to defendant and at its de-

mand was most surely prima facie evidence that defendant had received the goods for transportation.

The judgment of the circuit court is affirmed. All concur.

