## F. H. SMITH COMPANY, Respondent, v. LOUIS-VILLE & NASHVILLE RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals.    Submitted on Briefs April 7, 1911. Opinion Filed May 2, 1911.**

1. **APPELLATE PRACTICE: Matters Considered as Part of Record: Undisputed Statements of Counsel.** Although a telegram does not appear in full in the abstract of the record, yet where counsel in oral argument in the appellate court said it had been lost or mislaid and stated its substance, and this was not denied by adverse counsel, the court will assume it was in evidence in the trial below.

2. **COMMON CARRIERS: Diversion of Shipment on Consignor's Order: Liability of Carrier to Consignee.** In an action by a consignee against a common carrier for the diversion of three cars of lumber, on the order of the consignor, it appeared that the consignee had turned over to the carrier bills of lading for two of the cars, with a request for reconsignment, and was in possession of the third, several days before the cars were diverted; that the consignee refused drafts drawn for the three cars, and notified the consignor that he would not accept further shipments, and the consignor thereupon telegraphed the carrier that he owned the shipment and to hold the same on arrival, and not to notify the consignee; that several days thereafter and before the cars were reconsigned on the consignor's order, the consignee paid for the lumber; that the consignee repeatedly inquired of the carrier as to when the cars would arrive, and the latter answered that it was tracing them, although it had already reconsigned them. *Held*, there was sufficient evidence tending to fix on the carrier knowledge of the consignee's ownership, or at least his claim, so as to make it a party to the unlawful diversion.

3. ———: *Stoppage in Transitu: Insolvency.* Where there is no admission of the existence of a debt, the failure to accept or pay drafts drawn for the purchase price of goods shipped is not evidence of insolvency, which is a condition precedent to the exercise of the right of stoppage *in transitu.*

4. ———: **Diversion of Shipment on Consignor's Order: Liability of Carrier to Consignee.** Where a consignee refused drafts drawn for three cars of lumber consigned to him and notified the shipper that he would not accept further shipments, and the shipper thereupon notified the carrier not to deliver the three cars to the consignee, but, several days thereafter and before

the cars were reconsigned on the consignor's order, the consignee paid for the lumber, and the consignee had theretofore delivered bills of lading to the carrier for two of the cars with a request for a reconsignment, and had possession of the bill of lading for the third car, the carrier was liable to the consignee for diverting the cars on the consignor's order and for failing to deliver them to the consignee, although the latter, at one time, had refused to pay for them.

5. ———: ———: ———: **Sufficiency of Evidence.** In an action by a consignee against a carrier for its diversion of a shipment, on the order of the consignor, and its consequent failure to deliver the shipment to the consignee, evidence *held* sufficient to support a verdict against defendant.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Stewart, Bryan, Christie & Williams* and *Harold R. Small* for appellant.

(1) The delivery of the three cars by the consignor, Kennesaw Hardwood Lumber Company, to the initial carrier at Atlanta, Georgia, consigned to plaintiff at East St. Louis, Illinois, prima facie entitled plaintiff to delivery at East St. Louis. Were there no further facts in the case, defendants would have been bound to make delivery to plaintiff at East St. Louis on May 29th, and would undoubtedly have done so. Frazier v. Railroad, 104 Mo. App. 335; F. F. Smith Co. v. Railroad, 145 Mo. App. 394. (2) Defendant, however, before the arrival of the three cars at East St. Louis, Illinois, was notified by the consignor to hold the cars on arrival there for it, the consignor, Kennesaw Hardwood Lumber Company. One line of authorities holds defendant bound after receipt of such notice to hold the cars on arrival for the consignor. 2 Schouler on Personal Property, sec. 565; Pool v. Railroad, 23 S. C. 290; Benjamin (5 Ed.) 1906, p. 911; Hutchinson on Carriers (3 Ed.), sec. 773; Rosenthal v. Weir, 170 N. Y. 148, 57 L. R. A. 527. Another line

holds defendant bound after receipt of such notice to determine at its peril whether the consignor or consignee is entitled to delivery and to deliver to the one entitled. Hutchinson on Carriers (3 Ed.), sec. 773. (3) Defendant delivered to the consignor, which it is conceded at the time delivery was made on May 29th was entitled to have delivery made to it. Though the cars were consigned to plaintiff, the intention of the consignor and plaintiff, consignee, was that plaintiff was not to become entitled to the cars until plaintiff had accepted drafts for the cars. This intention controls. Frazier v. Railroad, 104 Mo. App. 355; Strother v. Lumber Co., 200 Mo. 647; F. H. Smith Co. v. Railroad 145 Mo. App. 394. As plaintiff consignee refused to accept the drafts, it did not become entitled to the delivery of the shipments or to the bills of lading. Shepherd v. Harrison, 23 Eng. Ruling Cases 349; Daniel on Negotiable Instruments, sec. 1734; Rosenthal v. Weir, 170 N. Y. 148 (5 Ed.) As furthermore plaintiff, by telegrams of May 28th and 29th, refused and stated its inability to accept any more drafts and any more poplar and directed the consignor to stop, plaintiff by such conduct threw the shipments back on the consignor and caused and ratified the act of the consignor in directing defendant to hold the cars at East St. Louis for the consignor, and also caused and ratified the act of defendant in holding the cars on May 29 and thereafter, as directed for the consignor. Schwarzschild v. Railroad, 76 Mo. App. 623; Hutchinson on Carriers (3 Ed.), sec. 328; Hutchinson on Carriers (3 Ed.), sec. 678; Stafsky v. Railroad, 143 Ala. 272; Bigelow v. Chapman, 43 Ill. App. 561. (4) The carrier bailment ended on May 29th, when the holding bailment began. Hutchinson on Carriers, sec. 772; Rosenthal v. Weir, 170 N. Y. 148, 57 L. R. A. 527. Holding for the consignor constitutes delivery. Hutchinson on Carriers, sec. 772; Hartman v. Railroad, 39 Mo. App. 88, 93; Rosenthal v. Weir, 170 N. Y. 148. (5) With proper delivery made on May 29th to the Kennesaw Hardwood Lumber Co. the

carrier relation ended and the bills of lading became dead, spent bills. National Bank v. Railroad 59 App. Div. (N. Y.) 270, in 172 N. Y. 596; Alabama National Bank v. Railroad, 42 Mo. App. 284; Rosenthal v. Weir, 170 N. Y. 148; Daniel on Negotiable Instruments (5 Ed.), sec. 1731-A; Hatfield v. Phillips, 9 M. & W. 467; Mortrum v. Heyer, 5 Den. 632. (6) The consignor had also the technical right of stoppage *in transitu.* Hutchinson on Carriers (3 Ed.), sec 761; Mechem on Sales, secs. 1539, 1540. (7) Defendant rightfully held the cars in a new relation on May 29th, May 30th and May 31st for its bailor, the Kennesaw Hardwood Lumber Co. This rightful holding as a mere bailee did not become a wrongful holding after the transfer of title on May 31st without notice thereof being brought to defendant's attention, nor did the dead, spent bills of lading of the old carrier relation become alive on May 31st without defendant's knowledge or consent so as to require defendant as a mere bailee to make another delivery as a carrier in accordance with the bills of lading. Nanson v. Jacobs, 93 Mo. 331, 340; Cooley on Torts (2 Ed.), p. 534; Anson on Contracts, p. 222; Rosenthal v. Weir, 170 N. Y. 148. Notice to defendant of the transfer of May 31st was essential to make defendant's holding thereafter for its bailor or the redelivery to its bailor on June 6th tortious. Nanson v. Jacobs, 93 Mo. 331, 340; Cooley on Torts (2 Ed.), p. 534; Anson on Contracts, *page 222; Bayer v. Trust Co., 144 Mo. App. 672. (8) In a suit to hold defendant liable as a carrier plaintiff can recover for violation of a carrier duty, but cannot recover on a showing of a liability arising after the carrier liability has ended. Kingman Implement Co. v. Railroad, 133 Mo. App. 317; Ingwerson v. Railroad, 205 Mo. 328.

*Thos. F. Galt* for respondent.

(1) The sending of the three bills of lading to the consignee by the shipper gave to the consignee prima facie title to the goods represented by the bills of lading.

This being proven, placed the burden of proof upon the shipper to show that the intention of the consignor and consignee was that the title should not pass until the goods were paid for. 1 Hutchinson on Carriers, page 210, par. 193, p. 211, par. 194; Benjamin on Sales, sec. 804 and 789; Mechem on Sales, sec. 740; Wigton v. Bowley, 130 Mass. 252; Mechem on Sales, secs. 788 and 789; Tiedeman on Sales, last paragraph of sec. 85 and sec. 332; Benjamin on Sales, sec. 764; Smith v. Railroad, 145 Mo. App. 394. (2) Although title was passed upon payment for the bills of lading, title to the three cars in question passed to respondent on May 31st, when he paid for these bills of lading. Smith v. Railroad, 145 Mo. App. 394.

REYNOLDS, P. J.—This is the second time this case has been before this court, the first on appeal of plaintiff, now on that of defendant. The facts in the case, as it was presented on the former trial, are fully set out in the report of the case, under the same title, F. H. Smith Company v. Louisville & Nashville Railroad Company, 145 Mo. App. 394, 122 S. W. 342. We refer to the statement there made as in this last trial the same stipulation of facts on which the case was then submitted was again in evidence, the case not however being submitted, as before, on the stipulation alone. The substantially new and additional testimony, while chiefly relating to the settlement said to have been had between the parties on May 31st, goes into the whole transaction somewhat more fully than set out in the stipulation. It will be noticed by reference to the report of the case when here before that the learned trial judge at the former trial did not pass upon the question of the settlement of May 31st, but held that it was immaterial, as the duty rested upon plaintiff to advise the railroad company as to its rights. We did not agree to this, holding that under the facts in the case, that is, that plaintiff, the con-

signee of the lumber, had in its possession bills of lading
for two of the cars in controversy and had turned them
over to defendant with directions for reshipment and had
in its possession the third bill of lading, in which it was
also named as consignee, a bill of lading issued by the
initial carrier, of which fact defendant was bound to
take notice unless the contrary appeared, having di-
verted all three of the shipments on the order of the con-
signor, did so at its own risk and peril, assuming the
burden of proof of the fact that the assignments had not
been paid for by plaintiff and that title was not in plain-
tiff, the named consignee; that in obeying the order of
the Kennesaw Hardwood Lumber Company to ship to
some other consignee, it did so at its peril. We hold that
is the correct rule (3 Hutchinson on Carriers [3 Ed.],
sec. 774), although there are some authorities to the con-
trary. This is so whether defendant held as carrier,
warehouseman or by other contract of bailment.

We further held in that decision (1. c. 409), that "If
there had been a settlement on May 31st as to these very
cars, then the title on June 6th was in plaintiff and when
defendant reconsigned the lumber at the shipper's order
it converted it as against plaintiff."

We are confirmed in the conclusion we reached be-
fore by the facts as now more fully developed.

In this last trial it appeared that the telegram of
May 28th from the consignor to defendant was about as
follows: "Hold the cars in question on arrival for us as
we are the owner. Do not notify the consignee." While
this telegram does not appear in full in the abstract or in
the agreed statement of facts, it was stated at the bar,
in argument, that it had been lost or mislaid, but that
this was its substance. This was not denied by counsel
for appellant. We therefore assume that it was in evi-
dence in this last trial. With these words, "Do not noti-
fy the consignee," in this telegram, defendant should
have been put on its guard as to accepting any order
from the consignor without at least some effort to ascer-

tain the facts from plaintiff, consignee named in the bill of lading under and by which it stood liable to that consignee for this lumber. It made no such effort. More than this, it does not appear to us that it treated the plaintiff fairly.

Two of the cars were received by defendant on May 29th. It is not clear when the third reached East St. Louis. The telegram to defendant, above referred to, is dated May 28th and presumably was received on that date. Following out the injunction contained in it, defendant gave no notice of its contents to the consignee, who it knew was the holder of the bills of lading. Not only that, but it not only did not advise plaintiff of the diversion of the shipments, which had been consummated by it on or about June 6th, but when plaintiff asked about them denied that the cars had been received by it. In point of fact, plaintiff did not learn that the delivery to it had been stopped and the shipment diverted until sometime in July. Defendant had kept this fact from plaintiff, although all through the intermediate time between May 25th and sometime in July, defendant had had the bills of lading of two of the cars, and in the meantime had received that of the third car from plaintiff, accompanied by orders from plaintiff for reconsignment of all three cars. Even when receiving these orders from plaintiff it gave no intimation whatever to plaintiff, so far as the testimony shows, that the cars were not at its order. On the contrary, when along in the first part of July, plaintiff asked defendant's agent why these cars had not come in, he was told by that agent that "they were tracing the cars." This was sometime after June 1st; apparently sometime after July 6th, this same answer being given to plaintiff on several occasions when its representative went to the railroad office inquiring about what had become of these three cars.

The court asked the president of plaintiff, under examination as a witness, if he never heard or knew until after July 1st and after the settlement had been

made between plaintiff and the consignor and a state-
ment of the account rendered by plaintiff to the
consignor, that the consignor had instructed
the railroad company to divert these cars to
Streator (or Steger), Illinois. He answered that
he never heard a word about it but was continually
asking defendant to trace the cars. The court asked
him if the consignor had ever informed him that it had
directed defendant to divert those cars to somebody else
and he said, "No." Asked where he got his first informa-
tion as to this matter, he answered: "Mr. Hamilton was
the chief clerk there (for defendant) and we had done
a great deal of business with the L. & N. road and I kept
asking him where the cars were, and so forth, and he told
me that they were tracing them, but they made a change
along in July, I think, to another clerk and he told me
those cars had been reconsigned and he had a telegram
signed by Mr. Chandler (Creelman?), telling them to
reconsign them, and that was the first knowledge I had
of it." The court asked him if that was after the 1st of
July and he answered, "Yes," and that in the meantime
they had been trying to get delivery of these cars. Asked
if he had told Mr. Creelman, the representative of the
Kennesaw Hardwood Lumber Company, when he was
here to make the settlement of May 31st, that plaintiff
had sent the bills of lading over to the railroad and
asked that the lumber be sent on up to the St. Louis Car
Company, he answered, "No, because there never was any
question as to my owning that lumber." All this is evi-
dence tending to fix on defendant knowledge of the own-
ership, at least claim of plaintiff, and to make it a party
to the unlawful diversion of this lumber. Nor is there
now any pretense of insolvency of the plaintiff, to be
gathered from the evidence; nor any evidence tending to
prove failure of title in plaintiff to these three cars of
lumber.

The testimony particularly relied upon by defend-
ant, as brought out on this second trial, as showing that

the drafts for the lumber were to be accepted and the lumber paid for before title passed, and that for this failure the right of stoppage in transit was present, is to the effect that the understanding was that defendant was to pay the drafts that were drawn on it, provided the lumber held up in grade; that in this case defendant was to pay the drafts on May 24th as to these particular cars; "and would have paid them if the shipments that were coming in had turned out correctly." Admitting that the drafts were to be accepted when presented, it is clear that even failure to accept did not affect title to the consignment. The understanding appears to have been that plaintiff would accept and pay the drafts and if on inspection of the lumber it was found to be under grade, the difference in price would be mutually adjusted. This has no bearing on the question of where this title to the lumber was to rest in the meantime; and mere failure to accept or pay the drafts, under such circumstances, was no evidence of insolvency. There was no admission of the existence of the debt.

Learned counsel for defendant places some stress on a decision of this court in Seigfried v. Chicago, Burlington & Quincy R. R. Co., 147 Mo. App. 543, 126 S. W. 798, claiming that that was a similar case, and quotes from that opinion the following (l. c. 551): "By the word 'insolvency' is meant a general inability to pay one's debts; and of this inability the failure to pay one just and admitted debt would probably be sufficient evidence." That is itself a quotation from Jeffries v. Fitchburg Railroad Co., 93 Wis. 256, there referring to Benjamin on Sales and Smith's Mercantile Law. Its inapplicability here is manifest. There the debt was admitted; here it was denied.

At this second trial there was evidence in the case tending to show that in the settlement had between the parties on May 31st, all matters had been adjusted in such manner as to put title in plaintiff, as consignee of these three cars of lumber; that these three cars of lum-

ber were included in that settlement; that plaintiff here had the invoices for all of them; had turned over the bills of lading for two of them to defendant with orders for reconsignment; had the other in its possession; that the adjustment then had between the parties was on the distinct understanding that ownership of these three cars of lumber was in plaintiff; that on that understanding it, had paid the consignor a slight difference, about $30, which was found in favor of the consignor, arrived at on the assumption that payment was to be made and was then made by plaintiff for those carloads of lumber; that the state of accounts between the parties was at that time of such character as to show that on previous transactions between the parties, plaintiff was entitled to a credit which carried over into its account was sufficient, with other dealings between the parties, to have paid the full price of the lumber contained in these three cars, within a few dollars.

On these facts in evidence in this present trial, the court instructed the jury that plaintiff was the consignee of the lumber covered by these three bills of lading in the three cars involved in this suit; that it had turned two of these bills of lading over to defendant as its agent to have the cars covered by the bills of lading reconsigned for it; that it had possession of the other bill of lading on the 31st of May, 1906, and the court thereupon further instructed the jury that if it found and believed from the evidence, "that on the 31st day of May, 1906, the plaintiff paid for the lumber contained in these cars, no matter whether the plaintiff had refused to pay for this lumber at one time or not, your verdict on each count must be for the plaintiff for the value of the lumber at East St. Louis, Illinois, less the freight from Atlanta, Georgia," stating the amount of freight and instructing that to the net amount the jury should add interest at the rate of 6 per cent per annum from June 6, 1906. Following this the court, at the instance of plaintiff, instructed: "If, on the other hand, you find that

plaintiff did not at some time prior to June 6, 1906, that is on May 31, 1906, in the alleged settlement made between plaintiff and the Kennesaw Hardwood Lumber Company, through its agent Creelman, pay for said three cars of lumber, or did not execute its written obligation to pay therefor, then you are instructed to find for the defendant. In other words, the court instructs you that if on June 6, 1906, you find that the three cars of lumber were the property of the plaintiff company, then your verdict should be for the plaintiff; and if you find that on said date the three cars were the property of the Kennesaw Hardwood Lumber Company, then your verdict should be for the defendant."

On the part of the defendant the court was asked to instruct the jury that under the bills of lading offered in evidence, defendant was obligated to deliver to plaintiff the cars of poplar in question at East St. Louis, Illinois, on their arrival at that place. "You are instructed, however, that if prior to said arrival, plaintiff notified the shipper, Kennesaw Hardwood Lumber Company, that it would not accept any more poplar and directed said Kennesaw Hardwood Lumber Company to stop and that if in pursuance of said notice the Kennesaw Hardwood Lumber Company, the shipper, caused defendant to hold said cars on arrival at East St. Louis, Illinois, for it, said Kennesaw Hardwood Lumber Company, then you are instructed that defendant was not obligated to deliver said cars to plaintiff, but was obligated to deliver said cars to the Kennesaw Hardwood Lumber Company, and you must find for defendant." This instruction was refused, defendant excepting. Three other instructions, to the effect that under the pleadings and evidence plaintiff was not entitled to recover on either count of the petition, were also refused.

Under the facts in evidence and the law of the case, the instruction given at the instance of plaintiff was correct. Necessarily the instructions asked by de-

fendant were properly refused, for if the instruction given at the instance of plaintiff was correct, as those asked by defendant were exactly to the contrary, and were absolutely inconsistent with those given, they should have been refused.

We have read over all the rather voluminous transcript with care, and are satisfied that the case was properly tried and presented to the jury. In point of fact, the case was tried very carefully and in exact accordance with the theory announced by this court when the case was here on the prior appeal. We see no reason to change what we there said as to the law. The verdict now returned is supported by ample evidence. On full consideration of the points made in the very learned brief of industrious counsel for appellant, we find no reversible error and see no reason, as before remarked, to recede from the views we took on the former appeal as to the law. The evidence now produced as to the settlement made May 31st is here—its weight was for the jury, subject to the approval of the trial court, and the case was correctly submitted to the jury. The judgment of the circuit court is affirmed.

*Nortoni* and *Caulfield, JJ.,* concur.